Carlos Makoto Taitano, State Bar No. 275820
MFPR Roppongi Azabudai Bldg. 11th Floor
1-8-7 Roppongi
Minato-ku, Tokyo 106-0032 Japan
Telephone: 1 671 777 0581
Email: makoto@taitano.us.com

*Attorney for Applicant*
*Meiyoukai Medical Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Ex Parte* Application of<br><br>Meiyoukai Medical Corporation,<br><br>Applicant. | Case Number:<br><br>**DECLARATION OF TOMOHIRO KANDA IN SUPPORT OF MEIYOUKAI MEDICAL CORPORATION'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

I, Tomohiro Kanda, declare as follows:

1. I am a Japan qualified attorney (b*engoshi* in Japanese), registered to practice law in Japan, and I am a partner at the Uchisaiwaicho Law Office, a Japan partnership operating as a law firm, which is located at Nippon Press Center Building 6th Floor, 2-2-1 Uchisaiwaicho, Chiyoda-ku, Tokyo 100-0011 Japan.

2. I have personal knowledge of each matter stated herein.

3. I submit this declaration in support of Meiyoukai Medical Corporation's (hereinafter "**Applicant**") *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in Foreign Proceedings (hereinafter "**Application**").

4. I was consulted by and advised the Applicant, which is *doing business as* Akaishidai Kodomo Clinic (hereinafter "**Clinic**"), about filing civil lawsuits against, and to do so, discovering the true identities of, anonymous individuals (hereinafter "**Anonymous Individuals**")

who used the Google accounts with the display names of "*Link*" and "*KG*" (hereinafter "**Accounts**") that published one-star ratings of the Clinic to Google Maps (hereinafter "**Reviews**").

5. Based upon my experience as a lawyer qualified to practice law in Japan and a lawyer with extensive experience in online defamation, the facts that (a) the Accounts published one-star ratings concerning the Clinic between February 14 and 16, 2024, (b) the Accounts published five-star ratings concerning a competitor of the Clinic on December 15, 2023 between 5 a.m. and 7 a.m., (c) the Accounts have reviewed or rated only those two clinics, (d) both clinics are located in the same town in close physical proximity, and (e) both clinics specialize in pediatric care, it is highly likely that the ratings published by the Accounts are advertisements published by the competitor to interfere with the Clinic's business activities.

6. Civil courts in Japan have held that such forms of advertisement are unlawful as a general tort under Article 709 of the Civil Code of Japan because it is "advertising in a manner that deviates from the scope of permissible free competition." Sapporo Chihō Saibansho [Sapporo Dist. Ct.] February 27, 2024, https://prtimes.jp/main/html/rd/p/000000061.000051691.html (Japan).

7. Based upon the Statement of Information of Google LLC (hereinafter "**Google**") filed September 7, 2023, the principal office of Google is located at 1600 Amphitheatre Parkway, Mountain View, California 94043; attached as **Exhibit 1** is a true and correct copy of the Statement of Information of Google filed September 7, 2023 obtained from the California Secretary of State.

8. The Applicant has informed me that it would like to and intends to file a civil lawsuit in Japan claiming tort damages against the Anonymous Individuals for interfering with the business of the Clinic pursuant to Article 709 of the Civil Code of Japan.

9. Article 709 of the Civil Code provides as follows:

> **(Damages in Torts)**
> Article 709. A person who has intentionally or negligently infringed any right of others, or legally protected interest of others, shall be liable to compensate any damages resulting as a consequence.

Minpō [Civ. C.] 2006, art. 709 (Japan).

10. Based upon my experience as a lawyer qualified to practice law in Japan, the Applicant will be able to make out a prima facie case because the Reviews meet the elements of a tort under Article 709, and therefore, the civil lawsuit that will be filed upon discovering the true identity of the Anonymous Individuals will withstand a motion to dismiss in a Japanese civil court.

11. No statute of limitation or other limitation in time to commence an action will prevent the Applicant from filing the civil lawsuit against the Anonymous Individuals.

12. In order to file a civil lawsuit in Japan, the true identity of a defendant is necessary, because Japanese law does not allow for lawsuits to be filed against anonymous persons; as such, the Applicant is unable to file the civil lawsuit pursuant to Article 709 because the true identities of the Anonymous Individuals is unknown.

13. The Applicant is seeking personal identifying information (hereinafter "**PII**") for the Anonymous Individuals through the discovery sought by the Application in order to identify the true identities of the Anonymous Individuals for the Applicant to file the civil lawsuit against the Anonymous Individuals.

14. Google is not, and will not be, a party or participant to the anticipated Japanese civil lawsuit described above and the information or documents sought through discovery are held by Google in the United States, and therefore, the information or documents sought through discovery are outside the reach of a Japanese court's jurisdiction.

15. Based upon my experience as a lawyer qualified to practice law in Japan, I am not aware of any restrictions imposed by or any policies under Japanese law limiting U.S. federal court judicial assistance for the purposes herein and in the Application.

16. Based upon my experience as a lawyer qualified to practice law in Japan, Japanese courts are receptive to assistance in discovery by U.S. federal courts, including for discovery of PII of individuals posting anonymous online ratings.

17. The Applicant is not attempting to circumvent any foreign proof-gathering restrictions or other policies of Japan or the United States.

18. The Applicant is seeking information concerning the Google Ads account or any other accounts that are controlled by Google that the Accounts are used to login with, because

based upon my experience, even where a person has not indicated their true PII in their Google account, they may have indicated their true PII in their Google Ads account or other accounts that they login to using their Google account.

19. The following is the reason why access log (dates, times, IP addresses, and port numbers) of the Accounts (hereinafter "**Recent Access Log**") is necessary, in addition to other PII, to identify the Anonymous Individuals:

(a) When the tortfeasor, the Anonymous Individuals in this case, accesses the internet to access his or her Google account or Google Maps, the tortfeasor's electronic device (e.g., their laptop or smartphone) initially communicates with an ISP [1] /; subsequently, the ISP communicates with a company providing online services (hereinafter "**Online Service Provider**"), in our case Google which provides the Google account and Google Maps services, whereby the tortfeasor is able to access his or her Google account.

(b) In each communication, information such as an IP address, a port number, and a time stamp (the time when the specific communication occurred), may have been recorded; these records are commonly known as an "access log."

(c) The ISP assigns an IP address and a port number to the tortfeasor when providing the tortfeasor with internet access; therefore, the ISP is able to identify the tortfeasor using the access log because it has a record of to whom it assigned a certain IP address and port number at a certain time.

(d) The ISP may assign a different IP address and port number every time that a tortfeasor accesses the internet; therefore, in order to identify a tortfeasor by using an IP address and a port number, the time and date that the person was accessing the internet using the specific IP address and port number is necessary.

(e) In layman terms, an IP address is the street address of the tortfeasor, while the port number is the room number.

---

[1] ISP stands for Internet Service Provider, and is an entity that provides internet access services to users, and examples of ISPs are AT&T and Verizon.

(f) Initially, a victim of an unlawful act on the internet, such as the Applicant, does not know the ISP of the tortfeasor; therefore, the victim needs for the Online Service Provider to disclose the access log in its possession. The Recent Access Log sought by the subpoena is seeking this information from Google.

(g) By obtaining the IP address and the port number from the Online Service Provider, the victim is able to identify the ISP used by the tortfeasor, because IP addresses are owned by ISPs, and the IP addresses owned by each ISP is publicly available information.

(h) By identifying the ISP used by the tortfeasor, the victim can provide the access log (the IP address, port number, and timestamp) to the ISP and request information such as the name and address of the tortfeasor from the ISP to identify the tortfeasor in order to file the civil lawsuit against the tortfeasor.

(i) In many cases, the Online Service Provider does not have accurate PII that is sufficient to identify the true identity of the tortfeasor because the Online Service Provider does not require the tortfeasor to record his or her true name, address, e-mail address, telephone number, or any other PII, which information must each be voluntarily provided by the tortfeasor.

(j) Where the tortfeasor created the Google account to damage the reputation of the victim, because the PII is voluntary, most of the information obtained about the Google account may be fictitious; for this reason, in many cases, the access log obtained from the Online Service Provider is the information that will lead to the victim identifying the true identity of the tortfeasor.

(k) Ideally, if the Online Service Provider keeps a complete access log indefinitely, a victim can more readily identify the tortfeasor; however, in practice, sufficient access log is not available because (i) the Online Service Provider does not record a complete access log for all communications, (ii) the Online Service Provider only keeps the access log for a short period of time (usually for three to six months); and (iii) a

tortfeasor can use special anonymization computer programs to prevent the victim from identifying the tortfeasor through the use of the access log.

(l) Because the access log is deleted by the Online Service Provider after several months, the more recent access log is critical in identifying the tortfeasor.

(m) The tortfeasor may be accessing the internet and the Online Service Provider using the anonymization computer program at times, but may have the program off at other times.

(n) For the foregoing reasons, more recent access log for a reasonable period of time is necessary because (i) the Online Service Provider may have not recorded a complete access log if discovery is limited to a short period of time, (ii) older access log has likely been deleted, and (iii) there is a possibility that the tortfeasor may have had his or her anonymization computer program turned off.

(o) If discovery is allowed only for a short period of time, and for only older access log, for the foregoing reasons, it will be less likely that the victim will be able to obtain information sufficient to identify the true identity of the tortfeasor.

(p) Therefore, for the foregoing reasons, it is reasonable to allow discovery of recent access log, and to not limit discovery to the period at or about the time that the unlawful statement was posted.

20. The Applicant is seeking various forms of PII, such as names, addresses, e-mail addresses, telephone numbers, banking information, and payment information, because although most of the PII that will be obtained is likely fictitious as explained in paragraph 19(i) and (j), certain pieces of information may be true and may lead to identifying the Anonymous Individuals; therefore, the Applicant needs to obtain a variety of PII because the Applicant cannot know before obtaining the relevant discovery which of the information registered to the relevant accounts is fictitious or not.

21. In order for the Applicant to identify the Anonymous Individuals through the ISP using an IP address and a port number, both the IP address and a corresponding port number and timestamp is necessary.

Declaration of Tomohiro Kanda

22. Without a corresponding timestamp, a Japanese court will not order a Japanese ISP to disclose information, and a Japanese ISP will be unable to pin-point the tortfeasor that was using the IP address at a certain point-in-time.

23. Additionally, where the port number is not disclosed, certain ISPs will be unable to pin-point the tortfeasor that was using the IP address even with a timestamp.

24. A port number is only used in conjunction with an IP address to identify the ISP of the tortfeasor, and is used by an ISP to pin-point who was using a certain IP address and a certain corresponding port number on a specific date and time, and for these reasons, a port number does not intrude upon a person's privacy.

25. A timestamp only shows when a person accessed his or her online account using a specific IP address and port number, does not disclose what the person was doing using their online account, and therefore, discovery of a timestamp only minimally intrudes upon a person's privacy; and the evidentiary value of a timestamp in allowing the victim to identify the tortfeasor far outweighs any privacy issues.

26. The destination IP address is the IP address of a website like https://www.google.com/maps.

27. Because of the enormous volume of traffic that certain websites receive, some websites are maintained on several IP addresses.

28. Some ISPs in Japan state that they cannot pinpoint the tortfeasor without the destination IP address (in addition to the IP address, port number, and timestamp), and therefore, if the Online Service Provider maintains the destination IP address, this may be critical in identifying the tortfeasor.

29. The destination IP address is simply the IP address of Google Maps, and therefore, disclosure of this information by the Online Service Provider does not intrude upon a person's privacy.

30. Finally, PII (other than the Recent Access Log) ever registered with the Google account is necessary, because based upon my experience as a lawyer qualified to practice law in Japan, the Anonymous Individuals may have not planned to damage the Applicant until a time

Declaration of Tomohiro Kanda

close to when the subject online statement was made, and as such, it is more likely that the Anonymous Individuals may have used their true identities until a time close to when the online statement was posted.

31. Recent PII is also relevant and necessary, because the Anonymous Individuals may have not changed PII that is not displayed publicly. Furthermore, the discovery of PII requested is not unduly intrusive, because this information is narrowly tailored to discover the true identities of the Anonymous Individuals and is not seeking irrelevant information.

32. Furthermore, based upon my experience, where a Google account is used for a legitimate purpose, PII is only changed occasionally, and because this information is stored by Google in the ordinary course of its business, and because Google charges a fee for the retrieval of this information through discovery, the burden placed upon Google in disclosing this information is minimal.

33. Based upon the foregoing, the information and documents sought from Google are highly relevant and crucial to the Applicant's anticipated civil lawsuit in Japan and are narrowly tailored and limited to the discovery of information necessary to identify the true identities of the Anonymous Individuals against whom the civil lawsuit will be filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April __26__, 2024.



TOMOHIRO KANDA

Page **8** of **8**

Declaration of Tomohiro Kanda



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
|---|
| **-FILED-** |
| File No.: BA20231413505 |
| Date Filed: 9/7/2023 |

BA20231413505

B2094-5690 09/07/2023 10:26 AM Received by California Secretary of State

| Entity Details | |
|---|---|
| Limited Liability Company Name | GOOGLE LLC |
| Entity No. | 201727810678 |
| Formed In | DELAWARE |
| **Street Address of Principal Office of LLC** | |
| Principal Address | 1600 AMPHITHEATRE PARKWAY<br>MOUNTAIN VIEW, CA 94043 |
| **Mailing Address of LLC** | |
| Mailing Address | 1600 AMPHITHEATRE PARKWAY<br>MOUNTAIN VIEW, CA 94043 |
| Attention | Attn: Legal Dept. |
| **Street Address of California Office of LLC** | |
| Street Address of California Office | 1600 AMPHITHEATRE PARKWAY<br>MOUNTAIN VIEW, CA 94043 |

**Manager(s) or Member(s)**

| Manager or Member Name | Manager or Member Address |
|---|---|
| XXVI Holdings Inc. | 1600 Amphitheatre Parkway<br>Mountain View, CA 94043 |

| Agent for Service of Process | |
|---|---|
| California Registered Corporate Agent (1505) | CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERV<br>Registered Corporate 1505 Agent |
| **Type of Business** | |
| Type of Business | TECHNOLOGY COMPANY |
| **Email Notifications** | |
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

**Chief Executive Officer (CEO)**

| CEO Name | CEO Address |
|---|---|
| Sundar Pichai | 1600 Amphitheatre Parkway<br>Mountain View, CA 94043 |

**Labor Judgment**

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

**Exhibit 1**

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

*Kenneth H. Yi*  *09/07/2023*

Signature  Date

B2094-5691 09/07/2023 10:26 AM Received by California Secretary of State

**Exhibit 1**